# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**United States of America,**

      **Plaintiff,**

**v.**                                                                             Case No. 18-40070-01-HLT

**William F. Bivens, III,**

      **Defendant.**

## **MEMORANDUM & ORDER**

Defendant William F. Bivens, III has been charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). This matter comes before the court on defendant's motion to suppress evidence obtained during the execution of a search warrant—namely, a particular firearm that he allegedly unlawfully possessed as charged in Count One of the two-count Superseding Indictment. Because defendant's motion to suppress is based solely on his assertion that the affidavit supporting the warrant application contained misrepresentations and omitted material facts, defendant further requested an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). On December 9, 2019, the court held an evidentiary hearing on the motion to suppress during which the court received evidence and heard additional argument on the motion.[1] For the reasons set forth below, the motion is denied.[2]

---

[1] By scheduling an evidentiary hearing on the motion to suppress, the court effectively granted that aspect of the motion seeking a *Franks* hearing without deciding whether defendant made the showing necessary to mandate a *Franks* hearing. *See United States v. Herrera*, 782 F.3d 571, 573-74 (10th Cir. 2015) (district court was entitled to grant *Franks* hearing without first demanding requisite showing; "often enough courts will choose to err on the side of granting more process than might be strictly necessary in order to ensure not only that justice is done but

*Background*

Defendant's motion to suppress turns entirely on the affidavit supporting the warrant which authorized the January 2018 search of the residence and detached garage located at 3302 SE Girard Street in Topeka, Kansas and the person of defendant Bivens. The affidavit was prepared and sworn to by Deputy Henry Harmon of the Shawnee County Sheriff's Office. In his affidavit in support of the search warrant application, Deputy Harmon sought permission to search for, among other things, methamphetamine, drug paraphernalia, and firearms. In the affidavit, Deputy Harmon set forth the evidence supporting probable cause to search. That evidence consisted primarily of information obtained from Christopher Allen and Malachi Morgan, two cooperating witnesses; a September 2016 incident linking defendant Bivens with narcotics activity; and an early January 2018 attempted controlled buy in which the target of the buy stopped at the 3302 SE Girard address.

As set forth by Deputy Harmon in his affidavit, he and Sergeant Hawks of the Shawnee County Sheriff's Office conducted an "open air surveillance" in the parking lot of a Walmart

---

that justice is seen to be done. Whether because of intuition born of experience that a meritorious issue may lurk in an imperfectly drawn application, or simply out of a jealous wish to guard individual rights against governmental intrusions, judges sometimes allow a claimant a fuller hearing than the law demands.").

[2] This case is assigned to Judge Teeter of this District. Because of a scheduling conflict, the undersigned agreed to conduct the hearing and rule on the motion. Prior to the hearing, both parties consented to this approach.

2

store located at 1301 SE 37th Street in Topeka, Kansas.[3]  After witnessing suspicious activity from a particular vehicle, Deputy Harmon and Sergeant Hawks, who were in separate unmarked vehicles, contacted deputies in marked vehicles to conduct a traffic stop on the vehicle. Ultimately, deputies arrested two passengers in the vehicle—Christopher Allen and Malachi Morgan.  The warrant affidavit indicated that Mr. Allen had an out-of-county warrant for his arrest; that deputies discovered a glass methamphetamine pipe and loaded syringes in Mr. Morgan's front pocket; and that a black bag, syringes and plastic baggies containing traces of a crystal-like substance were found in the back seat of the vehicle.  Those items were field-tested and showed positive for methamphetamine.  The affidavit indicates that Mssrs. Allen and Morgan were transported to the Law Enforcement Center in Topeka and placed in separate recorded interview rooms.[4]  Deputy Harmon interviewed Mr. Allen while Sergeant Hawks interviewed Mr. Morgan.

Deputy Harmon highlighted in his affidavit the following information obtained during his interview of Mr. Allen:  Mr. Allen has a substance abuse problem and typically uses methamphetamine; Mr. Allen lives at 3304 SE Girard Street; he purchases drugs from the defendant, who lives in the detached garage next door at 3302 SE Girard Street; he knows the defendant as "Wild Bill"; he identified "Wild Bill" as the defendant William Franklin Bivens from a photograph shown to him by Deputy Harmon; Mr. Allen purchased methamphetamine

---

[3] At the hearing, Deputy Harmon and Sergeant Hawks explained that an "open air surveillance" simply indicates that officers are not targeting a specific individual but are proactively looking for drug activity in public areas known for such activity.

[4] Sergeant Hawks testified that the individuals were transported separately.

from the 3302 SE Girard address that evening at 6pm; he witnessed several drug transactions at the Girard address that evening; and he saw defendant Bivens with a holstered gun on his person that day. Deputy Harmon also related in his affidavit the information obtained from Mr. Morgan during Sergeant Hawks' interview of him: Mr. Morgan purchased or worked for methamphetamine over 20 times from the Girard address; he has used the Girard address as his methamphetamine supplier for more than two years; and he has seen the owner of the residence at 3302 SE Girard Street (who is someone other than defendant Bivens) store methamphetamine and firearms in two safes that are in the detached garage.

Deputy Harmon did not expressly disclose in the affidavit that Mr. Morgan was under the influence of drugs at the time of his interview.[5] Sergeant Hawks testified that although Mr. Morgan appeared to be under the influence of drugs and had indicated that he had been using methamphetamine, Mr. Morgan clearly understood the discussion that they were having and that there was no reason not to continue the interview.[6] Deputy Harmon did not disclose that Sergeant Hawks mentioned to Mr. Morgan the possibility that he might decline to pursue charges against Mr. Morgan if he provided information to Sergeant Hawks nor did he disclose

---

[5] In his motion, defendant contends that Deputy Harmon also failed to disclose that Mr. Allen was under the influence of drugs. During his testimony, Deputy Harmon stated that he was not sure whether Mr. Allen was in fact under the influence of drugs. The video of the interview confirms Deputy Harmon's testimony that Mr. Allen was experiencing physical pain as a result of recent back surgery but does not otherwise suggest that Mr. Allen was under the influence of drugs. Defendant did not press this specific challenge at the hearing on the motion. Nonetheless, the court address that argument out of an abundance of caution.

[6] The video of the interview with Mr. Morgan depicts that Mr. Morgan was visibly upset and crying at the start of the interview. The video further supports Sergeant Hawks's testimony that Mr. Morgan calmed down considerably before Sergeant Hawks continued with the interview.

4

that he had suggested to Mr. Allen that he could help him with his out-of-county arrest warrant if he was willing to provide information to Deputy Harmon.

The affidavit also set forth as evidence of probable cause a September 2016 incident in which the Topeka Police Department had contact with defendant Bivens in which defendant Bivens admitted post-Miranda that he was selling and using heroin. Finally, Deputy Harmon relayed in the affidavit that during the first week of January 2018, the Topeka Police Department attempted a narcotics buy with a confidential informant. The informant provided funds to the targeted individual for the purchase of methamphetamine. Officers followed the targeted individual to the 3302 SE Girard Street address, but no drugs or money were returned to the confidential informant. Deputy Harmon was involved in that early January 2018 attempted controlled buy in that he was conducting surveillance on the case and knew that the 3302 SE Girard Street address had come up during the context of that case. Deputy Harmon, however, did not mention his involvement in that case in the affidavit.

*Discussion*

The Fourth Amendment permits the issuance of search warrants only upon a "truthful showing" of facts sufficient to comprise probable cause, meaning that "the information put forth is believed or appropriately accepted by the affiant as true." *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978). Thus, if there is substantial evidence to support deliberate falsehood or reckless disregard for the truth, and the exclusion of false statements would undermine the existence of probable cause, a warrant is invalid. *See id*. at 171-72. This is equally true when an affiant knowingly or recklessly omits information from an affidavit that would have negated probable

cause. *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990). Under *Franks*, then, a Fourth Amendment violation occurs if (1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued. *See Herrera*, 782 F.3d at 573.

Defendant asserts that the affidavit supporting the warrant in this case contained both material misrepresentations and material omissions in violation of *Franks*.[7] Defendant's primary argument in support of his motion is that Deputy Harmon failed to disclose in the affidavit certain facts that might undermine the credibility of the information obtained from Mssrs. Allen and Morgan. Specifically, defendant asserts that Deputy Harmon was required to disclose that Mssrs. Allen and Morgan were both high on narcotics at the time of their respective interviews and that both sought a specific benefit (i.e., assistance with their own legal troubles) in exchange for providing information. None of these omissions was reckless or material. Despite Deputy Harmon's failure to disclose that Mr. Allen and Mr. Morgan were under the influence of drugs when they gave their statements, other facts set forth in the affidavit would have alerted the judge to that likelihood. The affidavit disclosed that Mr. Allen and Mr. Morgan were arrested in possession of methamphetamine, had significant substance abuse problems, and were frequent purchasers of illegal narcotics. The affidavit disclosed that officers discovered

---

[7] In his motion, defendant challenges the paragraph in the affidavit that describes the September 11, 2016 incident in which law enforcement became aware that defendant was engaged in narcotics activity. At the hearing, counsel for defendant conceded that this paragraph contains no misrepresentations or omissions and that it did not taint the application in any way. Defendant also challenges in his motion the affiant's statement that Mr. Allen was provided with Miranda warnings. At the hearing, counsel for defendant conceded that Deputy Harmon clearly believed that Mr. Allen was Mirandized such that, at a minimum, any misstatement about that fact was neither reckless nor intentional.

6

"loaded syringes" and a glass methamphetamine pipe in Mr. Morgan's front pocket and that Mr. Allen had obtained a "user amount" of methamphetamine on the day of his statement. Based on these facts, the judge could reasonably infer that Mssrs. Allen and Morgan were under the influence of drugs when they gave their statements and that information was not required to be spelled out in the affidavit. *See United States v. Brinlee*, 146 Fed. Appx. 235, 239 (10th Cir. 2005) (affidavit need not include information about cooperating witness's emotional state and possibility that she was under the influence of drugs where inclusion of those facts would not have altered probable cause determination and judge could reasonably have inferred those facts from information disclosed).

Similarly, the court concludes that Deputy Harmon's failure to indicate in the affidavit that law enforcement agreed to assist Mr. Allen with an outstanding warrant in Wabaunsee County or suggested to Mr. Morgan that no charges would be filed against him stemming from his arrest does not constitute a reckless or material omission. As the Tenth Circuit has acknowledged—and as this court indicated at the hearing—judges issuing search warrants often know, even without an explicit statement in the affidavit, that many informants "may only be assisting police to avoid prosecution for their own crimes." *United States v. Morin*, 188 Fed. Appx. 709, 712 (10th Cir. 2006) (quoting *United States v. Avery*, 295 F.3d 1158, 1168 (10th Cir. 2002)). In *Morin*, for example, the defendant argued that the affiant omitted material information from the warrant affidavit when he failed to note that an informant was "a recently arrested methamphetamine user who agreed to be an informant in the hope that he would receive leniency from prosecutors." *Id*. The Circuit rejected that argument and held that other facts in the affidavit—namely, that the informant had purchased methamphetamine from the defendant

in the past—were sufficient to alert the judge that the informant may have been cooperating with police for self-serving reasons. *Id*. Again, Deputy Harmon explicitly disclosed that both Mr. Allen and Mr. Morgan had significant substance abuse problems and were frequent purchasers of illegal narcotics. Given that information, coupled with the fact that these individuals were arrested in possession of methamphetamine, the failure to disclose Mssrs. Allen's and Morgan's motivations for providing information to law enforcement does not undermine the existence of probable cause or invalidate the warrant.

Moreover, even if the motivations or mental states of Mssrs. Allen and Morgan might undermine their credibility in some general sense, the fact that Mr. Allen and Mr. Morgan separately and simultaneously provided the same information about the defendant and the 3302 SE Girard address was sufficient to indicate to officers that the specific information provided was reliable and sufficient to establish probable cause. Mssrs. Allen and Morgan were stopped together, transported separately to the police station and, without an opportunity to get their "stories straight," both identified the source of their drugs as the Girard address and placed defendant at that address. *See United States v. Wright*, 350 Fed. Appx. 243, 247 (10th Cir. 2009) (information provided by confidential informants and included in warrant affidavit was sufficiently reliable in part because the information provided by each informant corroborated the information received from the other informants); *Brinlee*, 146 Fed. Appx. at 239 (holding that an officer's omission of details that allegedly could have led the magistrate judge to infer from "[a cooperating witness's] behavior that she was under the influence of drugs or had a motive to lie," was not material where "the affidavit contained detailed descriptions given by [the witness]

along with information from other sources, which enhanced her credibility and corroborated her statements about the presence of drugs in the house").

This is particularly true because the information provided by both Mr. Allen and Mr. Morgan in terms of narcotics activity at the 3302 SE Girard address was consistent with information that Deputy Harmon already had about the Girard address from the early January 2018 attempted controlled buy. According to Deputy Harmon, he included the facts about the early January 2018 attempted controlled buy for that very reason—it provided an historical context establishing the Girard address as a place of potential narcotics activity. Defendant contends that the affidavit's reference to the January 2018 attempted controlled buy is misleading because it suggests that defendant was a target of that controlled buy or suggests that a controlled buy was attempted at the residence. The court disagrees. A plain reading of the short paragraph referencing the January 2018 attempted controlled buy simply indicates that the target of that buy was followed to the Girard address. Defendant is not mentioned in that paragraph and there is nothing that would suggest that defendant was a target in that attempted controlled buy or that a controlled buy was attempted at that address. In short, the information provided about the controlled buy further corroborates the information later provided to officers by Mssrs. Allen and Morgan—that drug trafficking activities were taking place at the Girard address.

Defendant's final challenge to the warrant concerns Deputy Harmon's statement in the affidavit that Mr. Allen told him "that he normally purchases his drugs from William Franklin Bivens." Defendant asserts that this statement is materially false because Mr. Allen stated only that he purchases his drugs from "Wild Bill" and never identified Mr. Bivens by name. While

9

defendant is technically correct as to what defendant said to Deputy Harmon, the meaning of Deputy Harmon's statement is clear from a full reading of the paragraph explaining Mr. Allen's knowledge of Mr. Bivens' identity:

> While speaking with Mr. Allen I learned that he lives at 3304 SE Girard St. Mr. Allen has a substance abuse problem; his drug of choice is Methamphetamine. He told me that he normally purchases his drugs from William Franklin Bivens, who lives in the detached garage next door, at 3302 SE Girard St. Mr. Allen knows Mr. Bivens as "Wild Bill." Mr. Allen identified "Wild Bill" as William Franklin Bivens, from a picture I showed him.

When placed in context, Deputy Harmon clearly indicates that Mr. Allen positively identified "Wild Bill" as the same person in the photo depicting defendant Bivens and as the same person from whom he routinely purchased methamphetamine.

In his reply brief, defendant suggests that the fact that Mr. Allen was shown a single photo that formed the basis of his identification of Mr. Bivens was improper and that the court should disregard that identification when assessing the existence of probable cause. Defendant's motion, however, seeks to impeach the veracity and care of the affiant. *Franks*, 438 U.S. at 171. Defendant does not suggest that Deputy Harmon misrepresented or omitted any facts about Mr. Allen's identification of Mr. Bivens from a single photo. Indeed, the language of the affidavit clearly suggests that Mr. Allen identified Mr. Bivens from a single photo. Moreover, it is clear from the affidavit that Mr. Allen had numerous encounters with Mr. Bivens such that he would be able to credibly identify Mr. Bivens from a single photograph and that, in such circumstances, the use of a single photo is not unnecessarily or impermissible suggestive. *See United States v. Evans*, 2015 WL 2070969, at *11 (D. Minn. May 1, 2015) (when someone already familiar with a suspect is asked to comment on whether a recorded voice or image

portrays the suspect, concerns underlying improperly suggestive lineup are absent) (citing *United States v. Dobbs*, 449 F.3d 904, 910 (8th Cir. 2006)).

For the foregoing reasons, defendant has not shown that Deputy Harmon's affidavit supporting the warrant application contains any deliberate or reckless misstatements or omissions. The motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to suppress (doc. 49) is denied.

**IT IS SO ORDERED.**

Dated this 19th day of December, 2019, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge